UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**PATRA JANE LEMMON**,

        Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

        Defendant.

Case No. 6:14-cv-02049-KI

OPINION AND ORDER

Kathryn Tassinari
Robert Baron
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Ste. 200
Eugene, OR 97401

    Attorneys for Plaintiff

Billy J. Williams
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Alexis L. Toma
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Patra Lemmon brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Lemmon filed applications for DIB and SSI on August 2, 2012, alleging disability as of December 14, 2011. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Lemmon, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on March 6, 2014.

On June 13, 2014, the ALJ issued a decision finding Lemmon was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 30, 2014.

Page 2 - OPINION AND ORDER

# DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

Page 4 - OPINION AND ORDER

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified urinary tract disorders as Lemmon's severe impairment, which did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ concluded Lemmon has the residual functional capacity ("RFC") to perform less than the full range of sedentary work. She is limited to unskilled, repetitive, routine work with occasional contact with the public, co-workers, and supervisors. She would be off task at work 9% of the time, but would still meet minimum production requirements. She would be absent one time per month.

Based on this RFC, the ALJ determined Lemmon could not perform her past relevant work, but could perform other work in the national economy including assembler small product I. Accordingly, the ALJ determined Lemmon is not disabled under the Act.

## FACTS

Lemmon was 33 years old on her alleged disability onset date of December 14, 2011. On that date, she went to the emergency room complaining of right flank pain, fever, nausea, and vomiting. Upon diagnoses of urinary tract infection and obstructed right ureteral stone, she underwent surgery to insert a ureteral stent. She developed sepsis with hypertension while in the recovery room and was admitted to intensive care. E. coli urinary tract infection appeared to be the cause of her sepsis and, after she was successfully treated with antibiotics, she left intensive

care on December 17; she was discharged from the hospital on December 27. Her condition on discharge, according to David DiMarco, M.D., was "good." Tr. 316. Dr. DiMarco completed a form for Lemmon to present to the credit union where she was a teller, approving her absence until January 23, 2012, at which time she could work half days as tolerated for a week. She could return to regular work hours beginning January 30, 2012. Tr. 454.

Lemmon followed up with Dr. DiMarco in early January for a ureteroscopic lithotripsy.[1] Tr. 392. On January 20, Dr. DiMarco reiterated that Lemmon could return to work on January 30. A few weeks later, Dr. DiMarco amended his permission, restricting Lemmon to half days beginning January 30 until February 3, 2012.

In April 2012, Lemmon returned to Dr. DiMarco complaining of right flank pain, after being seen in urgent care the night before. She reported progressing pain over three weeks, with malaise. Dr. DiMarco recommended a ureteroscopy with possible lithotripsy. Tr. 382. The next day, Dr. DiMarco performed a cystoscopy, right retrograde pyelogram, right ureteroscopy, right double-J stent placement. Tr. 384. A few days later, Lisa Stevens, PAC, in Dr. DiMarco's office, opined that Lemmon could not work from April 23 to May 10, 2012. Dr. DiMarco extended that date to May 14, 2012.

Lemmon returned to Dr. DiMarco at the end of May 2012, who recommended a repeat ureteroscopy with potential balloon dilation and stenting for two to six weeks depending on her tolerance for the stent. Tr. 374.

---

[1] "The breaking of a calculus (as by shock waves or crushing with a surgical instrument) in the urinary system into pieces small enough to be vided or washed out[.]" c.merriam-webster.com/medlineplus/lithotripsy (last visited Feb. 24, 2016).

In early June, Lemmon visited the nurse complaining of discomfort. She said she was able to tolerate the pain, but was worried about her kidney. Tr. 485. Dr. DiMarco approved Lemmon's absence from work for the time period of April 17 to July 6, 2012 due to her ureteral surgery.

At her office visit on July 6, Lemmon reported continued pain after the ureteral stent removal. She was taking Percocet for her right flank pain, and the nurse also recommended heat, ice, Tylenol and occasional ibuprofen. She was unable to work. Tr. 483. Dr. DiMarco then performed cystoscopy, retrograde pyelogram, robotic pyeloplasty,[2] and stent replacement in August. He diagnosed her with proximal ureteral stricture. Several weeks later, Lemmon reported "doing reasonably well after surgery with some minor stent irritation." Tr. 476.

In September, Lemmon complained of increased hematuria and flank pain over the weekend. She wanted to rule out an infection. She was taking 1/2 a tab of Percocet in the morning, and 1/2 tab in the afternoon, and one in the evening. The stent was removed later that month. A November image showed normal kidneys, normal bladder, and mild renal pelvic dilation bilaterally.

At her January 2013 appointment, Lemmon reported mild but progressive right flank pain "which has dropped her to her knees twice over the past month." Tr. 469. She was voiding without difficulty although "occasionally has some urgency." *Id.* Lemmon's prescription was renewed for Percocet, but Lemmon was encouraged to use a heating pad and manage with Tylenol or ibuprofen.

---

[2]"Plastic surgery of the renal pelvis of a kidney." c.merriam-webster.com/medlineplus/pyeloplasty (last visited Feb. 24, 2016).

Four months later, Lemmon reported "intermediate right nagging flank pain." Tr. 461. She was taking approximately 30 Percocet a month. Dr. DiMarco recommended conservative management with pain control and follow up in three months.

Another four months later, in September 2013, Lemmon complained of "persistent nagging right flank pain" for which she had increased her Percocet use. She reported voiding fine, but had "occasional urgency with small volume voids." Tr. 458. An x-ray showed no kidney stones.

In February 2014, just before her hearing with the ALJ, Dr. DiMarco opined that Lemmon would need "periodic rest every 4 hours during the day for 30-60 minutes for pain relief." Tr. 501. He thought she would miss more than four days per month. Lemmon's chart notes for that month repeat September's findings.

Three months after the ALJ issued his decision, Dr. DiMarco submitted a letter to the Appeals Council explaining that Lemmon's pain is a chronic issue, and that such pain is a known effect of ureteral obstruction repair.

In late September 2014, Dr. DiMarco referred Lemmon to a pain consultant named Peter Kosek, M.D. Lemmon reported her pain was not well managed with "oxycodone 5-325mg two daily[.]" Tr. 525. The specialist discussed options for physical therapy and diagnostic evaluation of her flank pain, but concluded, "For now she seems to have good overall analgesia on moderate oxycodone doses[.]" Tr. 528.

## DISCUSSION

Lemmon challenges the ALJ's decision on the following grounds: his assessment of her credibility; his treatment of Dr. DiMarco's opinion; and his analysis of the lay witness' opinion.

Lemmon also asserts the additional evidence submitted to the Appeals Council further supports her argument that the ALJ's decision is not supported by substantial evidence.

I.     Lemmon's Credibility

Lemmon argues the ALJ failed to give clear and convincing reasons to reject her testimony. Lemmon explained that pain affected her ability to sleep, she could not lift more than ten pounds, and she was limited in her ability to walk, sit, kneel and climb stairs. She took pain medications, which caused sleepiness and concentration problems. She needed to lie down every three hours during the day to minimize her pain.

The ALJ questioned the extent of Lemmon's pain on the basis of the medical evidence, her ability to return to work in 2012, and her daily household responsibilities.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based

on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[3]

The ALJ gave clear and convincing evidence to question Lemmon's testimony regarding the severity of her pain. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, Lemmon's condition upon discharge from the hospital at the end of 2011 was "good." Tr. 316; 24. Imaging indicated mild bilateral renal pelvic dilation. She herself complained of only mild pain on a number of occasions, that felt only occasionally like shooting pain, she received conservative care, and imaging revealed no obstruction. The ALJ's finding is supported by substantial evidence, and I will "not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted).

The ALJ also noted Lemmon returned to work and worked "through the second quarter of 2012 (July)" despite her alleged disability. Tr. 24. The record is unclear as to when Lemmon ceased working. In one document, she reported working until July 2012, but in other places she indicated she stopped working in April 2012. Regardless, the medical records reflect surgical procedures in January, April and May 2012, and other records confirm she did not work at the

---

[3]The Commissioner suggests the clear and convincing standard need not control the analysis, encouraging application of the more deferential regulatory requirement for specific reasons supported by substantial evidence. Def.'s Br. 4, n.1. The Ninth Circuit has rejected her argument. *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

substantial gainful activity level.  The ALJ's conclusion that Lemmon's "symptoms would not currently prevent work," based on the fact that Lemmon was able to work for a short time after her initial health crisis, is not a rational one.  Tr. 24.

Finally, Lemmon spent her days watching movies, reading, going outside daily, shopping in stores, and performing household chores.  Objective testing demonstrated she could lift more than 10 pounds.  She was responsible for her three children, ages 8, 12 and 15.  The oldest child has Asperger's syndrome, and the middle child has vision problems and may also have Asperger's.  The ALJ only partially credited Lemmon's testimony that her partner helped care for the children, when her partner worked full time.  Finally, Lemmon was able to go on a long car ride to California and go camping.

Although Lemmon provides an alternative interpretation of her testimony--pointing out that she wakes her children using an intercom, relies on her oldest boy to get the others ready for school, and that her partner usually prepares dinner--the ALJ's interpretation is just as rational.  For example, Lemmon reported she rarely drives, but she had driven just three days before the hearing.  She reported her partner usually prepares dinner, and now argues her partner assists her a great deal, but testified that she had to drive that day because her partner got called into work and she had to run to the store to get dinner.  She tied her testimony about how much work her partner missed to her procedures, and not to daily care for her or their children.  She testified she took the lead with the two older boys and their medical conditions.  She testified her husband had not had to leave work to care for her.  Her mother was just down the road, but Lemmon testified that her mom *calls* her every day, had done her laundry for her "not very" often, and that while

Page 11 - OPINION AND ORDER

her son did the laundry to help her out she felt it was important that "kids should have chores."
Tr. 86. In short, the ALJ's conclusion was a rational one.

Despite the fact that the ALJ improperly considered Lemmon's return to work as an adverse credibility factor, that does not mean the ALJ's entire credibility assessment is improper. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Overall, even if the evidence is susceptible to more than one interpretation, the ALJ provided clear and convincing reasons to question the extent of Lemmon's symptoms that are "supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1110.

II. Medical Opinion Evidence

Lemmon questions the ALJ's treatment of Dr. DiMarco's opinion that Lemmon would need to rest every four hours, and would miss more than four days of work per month. The ALJ commented on the contradiction between Dr. DiMarco's initial assessment that Lemmon could return to work and his later opinion that she would miss 4 days a month and need to rest every four hours. The ALJ questioned the grounds for Dr. DiMarco's second opinion when the record did not reflect a change in Lemmon's condition, when conservative care was recommended, and when objective testing was normal or reflected mild findings. The ALJ interpreted Dr. DiMarco's opinion to be based on Lemmon's complaints and not on objective evidence.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2. Since Dr. DiMarco's opinion was contradicted by state agency consultant Neal Berner, M.D., who opined Lemmon was capable of performing light work, the ALJ was required to give specific and legitimate reasons to support his conclusions about Dr. DiMarco's opinion.

The ALJ provided the required specific and legitimate reasons. The ALJ properly questioned the basis for Dr. DiMarco's opinion when he had previously released her to return to work, and when all of the imaging reflected normal or mild results, and when he recommended conservative treatment. The ALJ could rationally conclude that Dr. DiMarco relied on Lemmon's reporting as opposed to any objective findings in coming to his conclusions. *Tommasetti*, 533 F.3d at 1041 (a physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible"); *Batson*, 359 F.3d at 1195 (ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is " conclusory, brief, and unsupported by the record as a whole"). To the extent Lemmon relies on Dr. DiMarco's post-hearing statement, I address that argument below.

As of the time of the hearing, the ALJ did not err in his review of the evidence.

III. <u>Lay Testimony</u>

Lemmon's partner, Jeff Havice, submitted a third-party report indicating Lemmon has difficulty walking and sleeping, is in pain, that he cooks most of the meals and performs the household chores, that Lemmon needs to rest after walking 100 yards, and seldom shops. The ALJ gave some weight to Havice's observations, but questioned how Havice could prepare most meals when he was working full time. The ALJ also noted the limitations contradicted the medical evidence, that some of Havice's opinions merely reflected Lemmon's subjective complaints, and that supported limitations were accounted for in the RFC.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

Lemmon relies on Havice's post-hearing statement to explain Havice's schedule. At the time of the hearing, however, the ALJ could properly question Havice's assertion that he prepares most meals, when the ALJ understood Havice's shift often had him at work during dinner time. In addition, Lemmon's complaints of mild pain and conservative treatment in the medical records conflicted with Havice's reports about her limitations and repeated Lemmon's own complaints which the ALJ properly rejected. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (a legitimate reason to discount lay testimony is that it conflicts with medical evidence); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (acceptable to reject spouse's testimony for same reasons given for claimant if spouse's testimony was similar to claimant's complaints). The ALJ's assertion that Lemmon's unsuccessful work attempt conflicts with Havice's opinion is not a germane reason and I will not consider it. Overall, the ALJ

limited Lemmon to less than the full range of sedentary work, and limited her to unskilled, repetitive, routine work with only occasional contact with the public, coworkers, and supervisors, and allowed her to be off-task nine percent of the time. This RFC accounts for all the limitations that are supported by substantial evidence, and the ALJ gave germane reasons to reject Havice's testimony about more restrictive limitations.

IV.     Additional Evidence Presented to the Appeals Council

Lemmon argues the following additional evidence she submitted to the Appeals Council undermines any substantial evidence supporting the ALJ's decision: Dr. DiMarco's explanation that Lemmon's pain was the kind of symptom that is well documented in the medical literature for her condition; Lemmon's treatment by the pain consultant; and the letters from Lemmon's mother and Havice.

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits. The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. *Id; but see Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1162-63 (9th Cir. 2012) (remanding for a finding of disability). The question is "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)).

In his post-hearing letter, Dr. DiMarco explained that Lemmon:

> did have initial improvement in symptoms following a robotic pyeloplasty in 2012. She was released to work without any restrictions from a surgical point of view. She did however shortly thereafter have recurrence and worsening of her pain which has maintained and is now a chronic issue. Chronic persistent pain following ureteral obstruction repair is well established phenomenon reported in the literature.

Tr. 517.

While this evidence certainly tilts in favor of Lemmon, I remain convinced that "in light of the record as a whole, the ALJ's decision was supported by substantial evidence." *Brewes*, 682 F.3d at 1163. Dr. DiMarco's letter is evidence that Lemmon's condition improved for a time, contradicting Lemmon's assertion that her onset date of disability occurred in December 2011. Lemmon herself reported doing "reasonably well" after the August 2012 surgery, reported only occasional pain in January 2013, "mild tenderness" in May 2013, and was in "no acute distress" at the time of Dr. DiMarco's February 2014 opinion. Further, the ALJ did not reject the notion that Lemmon suffered from pain, and he accommodated some of her symptoms in the RFC. Finally, the ALJ's opinion appears to be consistent with Dr. Kosek's opinion who, although he noted initially that Lemmon's oxycodone dosage did not manage her pain, later concluded "she seems to have good overall analgesia on moderate oxycodone doses[.]" Tr. 525, 528.

With regard to Havice's post-decision letter, in which he explains he works only 28 hours a week, and is home most nights, the evidence does tend to undermine the ALJ's basis to question responsibility for meal preparation. Nevertheless, in light of the record as a whole, including the contradictions with the medical evidence and that Havice's opinions merely

reflected Lemmon's subjective complaints, the ALJ's opinion remains supported by substantial evidence.

I am even less convinced Lemmon's mother's letter undermines the substantial evidence supporting the ALJ's decision. As the Commissioner points out, at the hearing Lemmon credited her mother only with helping her out after surgery, and in her written report she indicated Havice cares for the children without mentioning her mother.

In sum, the additional evidence does not deprive the ALJ's decision of substantial evidence.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___29th___ day of February, 2016.

       /s/ Garr M. King
      Garr M. King
      United States District Judge